**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 08-cv-02253-CMA

RALPH WRIGHT,

      Applicant,

v.

WARDEN ARELLANO, A.V.C.F., C.D.O.C, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2254**

---

      This matter is before the Court on Applicant Ralph Wright's Second Amended

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Second

Amended Application") (Doc. # 15).  Respondents answered the Second Amended

Application (Doc. # 29), and Applicant filed a Reply (Doc. # 30).  After reviewing the

pertinent portions of the record in this case including the Second Amended Application,

the Answer, the Reply, and the state court record (Doc. # 33), the Court concludes that

the Second Amended Application should be denied.

## I.  BACKGROUND

      Applicant was convicted on April 15, 1999, by a jury in El Paso County District

Court case number 97-CR-2513 of one count of distribution of a controlled substance,

based upon his sale of cocaine to an undercover police officer.[1]  In a separate

proceeding, the trial court adjudicated Applicant as a habitual offender.  On March 12,

2002, he was sentenced to 96 years in the Colorado Department of Corrections (DOC).

Applicant filed a direct appeal of his conviction, raising one claim that the trial

court erred in failing to revise the elemental instruction for the charged offense.  The

Colorado Court of Appeals (CCA) affirmed on direct appeal.  *See People v. Wright*,

No. 02CA805 (Colo. App. Dec. 11, 2003) (unpublished opinion).  On September 7,

2004, the Colorado Supreme Court denied certiorari review.

On January 28, 2005, Applicant filed a post-conviction motion pursuant to

Colorado Rule of Criminal Procedure 35(c), which the trial court summarily denied on

February 7, 2005.  Applicant appealed the denial of his post-conviction motion, and on

July 19, 2007, the CCA affirmed the trial court.  *See People v. Wright*, No. 05CA407

(Colo. App. July 19, 2007) (unpublished opinion).  He filed a petition for rehearing,

which the CCA denied on August 23, 2007.  On January 22, 2008, the Colorado

Supreme Court denied certiorari review.

Applicant filed a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 in this Court on November 7, 2008.  On February 6, 2009, Magistrate

Judge Boyd N. Boland determined that the Application was deficient because it failed to

comply with Rule 8 of the Federal Rules of Civil Procedure.  Accordingly, Magistrate

Judge Boland directed Applicant to file an Amended Application.  After receiving an

---

[1]  This general introductory background is taken from the uncontested statement of facts
in Respondents' Answer (Doc. # 29 at 3-7).

extension of time, Applicant file an Amended Application on March 19, 2009.  On March 23, 2009, Magistrate Judge Boland again determined that the Amended Application was deficient, and directed Applicant to file a Second Amended Application, which he filed on April 9, 2009.  In the Second Amended Application, Applicant asserts three claims for relief: (1) that his Sixth Amendment right to a jury trial was violated because the jury was prevented from hearing evidence of his incompetency; (2) that Applicant received ineffective assistance of counsel because his attorney failed to request a competency evaluation; and (3) that his due process rights were violated because he was tried and sentenced while incompetent (Doc. # 15 at 5-12).

On April 13, 2009, Magistrate Judge Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state court remedies.  Respondents filed their pre-answer response on April 28, 2009, asserting that Applicant had failed to exhaust his claims in the state court, and that these claims were procedurally defaulted (Doc. # 19).  Applicant filed a reply on May 13, 2009 (Doc. # 20).

On June 26, 2009, Senior Judge Zita L. Weinshienk entered an order dismissing Applicant's first and second claims as procedurally defaulted (Doc. # 21).  Nonetheless, finding that Applicant's third claim had been exhausted in the state courts, Senior Judge Weinshienk ordered Claim Three drawn to a district judge and to a magistrate judge.

## II.  LEGAL STANDARD

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle*

*v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

"When a federal district court reviews a state prisoner's habeas Application pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the Applicant's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because Applicant filed his Application after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas Application when the Applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are

> materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (emphasis in original). Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the Applicant's claims." *Id.*

## III.  DISCUSSION

The only claim remaining in this action is Applicant's third claim, in which he asserts that his due process rights were violated because he was tried and sentenced while incompetent (Doc. # 15 at 10-12). As a preliminary matter, Respondents again argue that, pursuant to 28 U.S.C. § 2254(b)(1), Applicant's third claim is unexhausted and procedurally defaulted.

**A.      LAW OF THE CASE DOCTRINE**

As previously set forth, Respondents have submitted a pre-answer response, in which Respondents similarly raised the argument that claim three was procedurally defaulted because Applicant failed to raise it as a federal constitutional issue in the state courts (Doc. # 19 at 11-14).  After carefully considering this argument, on June 26, 2009, Senior Judge Weinshienk determined that Applicant had presented claim three to the state courts as a federal claim, and therefore, that the claim was exhausted (Doc. # 21 at 10).

Respondents again raise the exhaustion and procedural default arguments previously briefed in the pre-answer response.  The Court, however, concludes that Senior Judge Weinshienk's exhaustion determination is binding here, providing the law of the case.  "The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  The Tenth Circuit has recognized that the law of the case doctrine "applies to all issues that were previously decided, whether explicitly or by implication."  *Sparks v. Rittenhouse*, 314 Fed. Appx. 104, 108 (10th Cir. Sept. 16, 2008) (unpublished decision) (citing *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)).  The courts are authorized to depart from the law of the case doctrine only "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly

erroneous and would work a manifest injustice." *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009) (internal quotation marks omitted).

In her June 26 Order, Senior Judge Weinshienk explicitly concluded that Applicant had presented his third claim to the state courts as a federal constitutional one, and therefore, that this claim was exhausted (Doc. # 21 at 10). Although Respondents have reasserted the defenses of exhaustion and procedural default, they simply restate the facts and argument previously presented on this issue. Further, while Respondents provide some additional argument, it is merely an extension of the legal arguments considered and rejected by Senior Judge Weinshienk. Respondents do not demonstrate any of the three grounds that would authorize the Court to depart from the law of the case doctrine, *see Clark*, 590 F.3d at 1149, and therefore, the Court finds no basis to revisit their defense of procedural default. Accordingly, the Court will address claim three on its merits.

**B.     CLAIM THREE**

In his third claim, Applicant argues that, due to his medical and psychological conditions, and medications used to treat those conditions, he "departed from the normal pattern of thinking and feeling" during his trial (Doc. # 15 at 9). He argues that, "[t]hroughout the majority of [his] trial, [he] was not in contact with reality. This left [him] unable to help [his] attorney." (Doc. # 15 at 9.) In the Second Amended Application, Applicant does not further explain the nature of his medical or psychological conditions. However, in his opening brief on post-conviction appeal, he asserted that he suffered from an infection, shingles, and a series of small strokes, all of which contributed to his

"neurologic deficits" during trial and sentencing (Doc. # 29-9 at 3-4). Applicant also

asserts that he was taking "psychotropic medications" during trial, although he provides

no additional information regarding the nature of the medication or its effects (Doc. # 15

at 10). He argues that his due process rights were violated because the trial court failed

to hold a competency hearing. (*Id.*)

In addressing this claim on Applicant's post-conviction appeal, the CCA

concluded the following:

> Defendant next contends the trial court abused its discretion by
> failing to hold a competency hearing because he was incompetent at trial
> and sentencing based on his use of antipsychotic medication. We
> disagree.
>
> Section 16-6-111, C.R.S. 2006, provides that whenever the
> question of a defendant's competency to proceed is raised, the court shall
> make a preliminary finding that the defendant is or is not competent to
> proceed.
> . . . .
>
> However, our review of the record reveals that (1) sentencing
> counsel raised the issue of defendant's competency numerous times
> based on defendant's medical conditions; (2) the trial court granted
> continuances based on defendant's medical concerns; (3) the trial court
> ordered a competency evaluation based on sentencing counsel's request;
> and (4) the competency evaluation results showed that defendant was
> able to communicate with counsel, was able to comprehend legal
> proceedings, and was competent to proceed. Based on this report, the
> trial court found defendant was competent. Defendant did not challenge
> the trial court's finding or request a competency hearing.
>
> The record also reflects that the competency concerns and
> evaluation were based on defendant's medical condition, specifically the
> infection and seizures. However, the record does not show that defendant
> raised the issue of his medication. In addition, defendant's postconviction
> motion only alleges that the medication resulted in his not being in a "clear
> frame of mind." *See People v. Bossert*, 772 P.2d 618, 621 (Colo. 1989)

(statements in the defendant's Crim. P. 35(c) motion failed to allege, let alone establish, the sufficient grounds for the requested relief).

Accordingly, based on this record we conclude the trial court did not abuse its discretion by failing to hold a competency hearing based on defendant's use of antipsychotic medication.

(Doc. # 29-10 at 8-9).

It is a violation of due process to convict a person who is not legally competent to stand trial. *Pate v. Robinson*, 383 U.S. 375 (1966); *see also Indiana v. Edwards*, 554 U.S. 164 (2008). A due process claim based on failure to hold a competency hearing is evaluated both on procedural and substantive grounds. *Allen v. Mullin*, 368 F.3d 1220, 1239 (10th Cir. 2004).

"A procedural competency claim is based on a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." *Id.* (internal quotation marks omitted). The test for determining competency to stand trial is "'whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* at 1238-39 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). The Tenth Circuit has recognized that:

To make out a procedural competency claim, a defendant must raise a bona fide doubt regarding his competency to stand trial[.] This requires a demonstration that a reasonable judge should have doubted the defendant's competency. It does not require proof of actual competency. A substantive competency claim, on the other hand, requires the higher standard of proof of incompetency by a preponderance of the evidence.

*Id.* at 1239 (citations and quotation marks omitted) (citing *Cooper v. Oklahoma*, 517 U.S. 348, 368-69 (1996)).

To determine whether there was a "*bona fide* doubt" regarding a criminal defendant's competency, the Supreme Court has noted that "evidence of . . . irrational behavior, . . . demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors, standing along, may, in some circumstances be sufficient." *Drope v. Missouri*, 420 U.S. 162, 180 (1975); *see also Clayton v. Gibson*, 199 F.3d 1162, 1171 (10th Cir. 1999) (emphasizing that prior medical opinions regarding an applicant's competency are "perhaps most important"). "Evidence of mental illness and any representations of defense counsel about the defendant's incompetence also may be considered." *Gilbert v. Mullin*, 302 F.3d 1166, 1179 (10th Cir. 2002); *see also Drope*, 420 U.S. at 177 n. 13 (finding that "[a]lhough we do not . . .suggest that courts must accept without question a lawyer's representations concerning the competence of his client . . . an expressed doubt in that regard by one with the closest contact with the defendant . . . is unquestionably a factor which should be considered."). The Court must "examine the totality of the circumstances . . . . The question is . . . whether the trial court 'fail[ed] to give proper weight to the information suggesting incompetence which came to light during trial.'" *McGregor v. Gibson*, 248 F.3d 946, 954 (10th Cir. 2001).

Finally, the Tenth Circuit has recognized that "[c]ompetency to stand trial is a factual question." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999). Accordingly,

the Court must "afford the state court's finding of competency a presumption of correctness [pursuant to 28 U.S.C. § 2254(e)(1)] unless [Applicant] rebuts the presumption by clear and convincing evidence." *Wallace v. Ward*, 191 F.3d 1235, 1243 (10th Cir. 1999).

         1.    <u>Procedural Competency Claim</u>

To succeed on a procedural competency claim, the burden is on the applicant to present facts that "establish that a reasonable judge should have had a *bona fide* doubt as to his competence at the time of trial." *Gilbert*, 302 F.3d at 1180. Applicant argues that his statements to the trial court during his *Curtis* advisement[2] should have created a *bona fide* doubt as to his competency (Doc. # 15 at 9). The trial judge gave Applicant a *Curtis* advisement on April 15, 1999 (Trial Transcript, 1999-4-15AM, p. 342). During the advisement, the trial judge asked Applicant a detailed series of questions to ascertain whether Applicant fully understood his right to testify at trial. After listening to each question, Applicant replied in the affirmative, informing the trial court that he fully understood his rights. The exchange to which Applicant refers occurred at the end of the advisement:

        The Court: Do you understand the advisement I've given you, sir?

        Defendant: I do.

        The Court: All right. Is there anything further that you wish to have explained to you concerning your right to testify or not to testify?

---

[2] In *People v. Curtis*, 681 P.2d 504, 514-15 (Colo. 1984), the Colorado Supreme Court held that a defendant's waiver of his constitutional right to testify on his own behalf at a criminal trial must be voluntary, knowing and intelligent and that the existence of an effective waiver should be ascertained by the trial court on the record.

Defendant: Please say that again, please.

The Court: Sure. Is there anything further you wish to have explained to you regarding your right to testify or not to testify?

Defendant: Do I have any other - -

The Court: Do you have any other questions about what - - if you choose to testify, what can happen?

Defendant: I really don't even know. At the point I'm at, I don't know right from wrong anymore. I've been sitting in this trial; I don't know what's going on, really, Your Honor. I really don't know. I don't know if I should testify or not. I haven't discussed it. I just really don't know what point in time this is, Your Honor. What I'm saying is to expedite the time, we can just go on and move forward with this, so - - without me testifying, I guess. And just whatever y'all have to do, do it, you know.

The Court: Well, with regard to your right to testify or not to testify, do you understand that if you do not testify, then the jury would be instructed about that right? And the jury would be told that they cannot infer your guilt from the fact that you remained silent. It would still be up to the district attorney to prove each and every element of the crime charged against you beyond a reasonable doubt. Do you understand that if you choose not to testify?

Defendant: Right.

The Court: All right. Mr. Wright, in terms of your decision, have you made a decision as to whether or not you'll be testifying?

Defendant: This was such an abrupt moment.
. . . .

The Court: All right. Well, I'll - - I know that I'll be taking an afternoon recess . . . . Would you like that time to think about this decision and to speak to Mr. Donovan? Or do you want to tell me now what your decision is?

Defendant: I'll confer with him.

(Trial Transcript, 1999-4-15AM, p. 344-46).

After conferring with his attorney, Applicant later informed the trial court that he had decided not to testify in his own defense  (Trial Transcript, 1999-4-15AM, p. 346-47).  Although the record here demonstrates that Applicant indicated some confusion to the trial court regarding the proceedings and his right to testify, the Court finds that this isolated incident is not sufficient to "establish that a reasonable judge should have had a *bona fide* doubt as to [Applicant's] competence at the time of trial."  *Gilbert*, 302 F.3d at 1180 (citing *McGregor v. Gibson*, 248 F.3d 946, 954 (10th Cir. 2001)).   Importantly, Applicant did not reiterate to the trial judge that he was confused about the proceedings, at no time did he indicate that he was incompetent to proceed with trial due to his medical or psychological conditions, and there is no evidence in the record that Applicant's trial counsel raised any concerns with respect to Applicant's competence to stand trial.  Further, having reviewed the entire trial transcript, the Court has failed to locate any additional evidence of irrational behavior by Applicant or any other indication that his demeanor during the trial demonstrated a lack of competence.

After the trial, new counsel ("sentencing counsel") was appointed to assist Applicant with the sentencing and habitual offender phase of his criminal case.  It appears that on or around September 11, 2000, sentencing counsel began to raise concerns with the trial court that Applicant was not competent to proceed with sentencing (Doc. # 19-8 at 8-9).  Sentencing counsel requested numerous continuances of the sentencing and the habitual offender proceeding, which the trial court granted.  In April of 2001, sentencing counsel filed a written request for a competency evaluation, which the trial court granted (Doc. #19-9 at 7).  On May 7, 2001, Applicant was admitted

to the Colorado Mental Health Institute in Pueblo, Colorado to be evaluated pursuant to court order.  Applicant was evaluated by Dr. Rhonda Reid.[3]  The Colorado Court of Appeals concluded that the competency evaluation demonstrated that Applicant "was able to communicate with counsel, was able to comprehend legal proceedings, and was competent to proceed." (Doc. # 29-10 at 8-9).  There is no record of a hearing following the completion of the competency report, or of a formal ruling on a motion to determine competency (Doc. # 19-9 at 8).  On September 12, 2001, sentencing counsel filed a motion challenging several of Applicant's prior convictions, and it appears that Applicant was adjudicated, and sentenced, as a habitual criminal on March 12, 2002 (Doc. # 19-9 at 9).  The Court can find no further record of any discussions regarding Applicant's competency.

Having reviewed the material in the state court record, the Court concludes that the state court did not reach an unreasonable determination of the facts when it concluded that the evidence did not raise a *bona fide* doubt as to Applicant's competency.  Although Applicant's sentencing counsel expressed concern regarding Applicant's competence, "the concerns of counsel alone are insufficient to establish doubt of a defendant's competency."  *Bryson*, 187 F.3d at 1201.  Excluding the isolated event during the *Curtis* advisement, which the Court has already evaluated, Applicant's conduct at trial and sentencing appears from the record to have been appropriate.  *See*

_____

[3]  The competency evaluation prepared by Dr. Reid is a sealed state court record.  The Court has cited to it for same purpose as the Colorado Court of Appeals in its decision on post-conviction appeal; namely, to note that a competency evaluation was performed prior to sentencing, and that Applicant was found competent to proceed (Doc. # 29-10 at 8-9).

*Drope*, 420 U.S. at 180 (directing the courts to search for "evidence of . . . irrational behavior" and to examine the applicant's "demeanor at trial").  No evidence of hospitalization for mental health problems has been presented.  There is also no evidence that other courts, or other doctors, have made prior findings concerning Applicant's lack of competence.  *See Clayton*, 199 F.3d at 1171 (emphasizing that prior medical opinions regarding an applicant's competency are "perhaps most important") Finally, as noted by the Colorado Court of Appeals, Applicant was examined by a doctor after trial and determined to be competent (Doc. # 29-10 at 9).

Applicant has not demonstrated that he did not have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or that he did not have "a rational as well as factual understanding of the proceedings against him." *Allen*, 368 F.3d at 1238-39.  Therefore, he has failed to "establish that a reasonable judge should have had a *bona fide* doubt as to his competence at the time of trial." *Gilbert*, 302 F.3d at 1180; *Cf. McGregor*, 248 F.3d at 955-60 (finding *bona fide* doubt raised where applicant behaved oddly at trial, had a substantial history of mental illness such as psychosis, required mental hospitalization, suffered blackout spells and delusional symptoms and applicant's attorney "was adamant throughout trial that [applicant] was incompetent.").

The state court's factual determination with regard to Applicant's competency is presumed to be correct, and Applicant has not rebutted this presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  The Court is required to give deference to the state court's factual findings and, in doing so, the Court concludes that

the state court's findings related to Applicant's competency did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Applicant is not entitled to habeas relief on his procedural due process claim.

     2.    <u>Substantive Competency Claim</u>

Applicant's failure to establish his procedural competency claim is also dispositive of his substantive claim. As noted previously, the standard for establishing a substantive due process violation is more demanding than the "*bona fide* doubt" standard that governs procedural competency claims. *See Walker v. Atty Gen. of Oklahoma*, 167 F.3d 1339, 1347 (10th Cir. 1999). "[T]o succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a "'real, substantial and legitimate doubt' as to his competency to stand trial." *Id.* The evidence here, which does not satisfy the "*bona fide* doubt" standard for a procedural claim, also "cannot meet the more stringent substantive due process competency standard." *Walker v. Gibson*, 228 F.3d 1217,1230 (10th Cir. 2000). Therefore, Applicant is not entitled to relief on his substantive due process claim.

## IV.  CONCLUSION

Accordingly, IT IS ORDERED:

1.    Applicant Ralph Wright's Second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 15) is denied.

2.      No certificate of appealability will issue because Applicant has not made

a substantial showing of the denial of a constitutional right.

3.      This case is DISMISSED WITH PREJUDICE.

DATED:  September __30__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge